## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**DERRELL GILCHRIST,**            )
                                  )
            **Plaintiff,**        )
     **v.**                       )          **Civil Action No. 05-1540 (RJL)**
                                  )          **ECF**
**U.S. DEPARTMENT OF JUSTICE,**   )
                                  )
            **Defendant.**        )
                                  )

---

### DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Defendant, the U.S. Department of Justice ("DOJ"), by and through its undersigned attorneys and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby respectfully moves for summary judgment in its favor in this case brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act ("PA"), 5 U.S.C. § 552a.  Summary judgment is sought on the grounds that there are no material facts in dispute and the facts establish that Defendant is entitled to judgment as a matter of law.  A statement of material facts as to which there is no genuine dispute, a memorandum of points and authorities in support of this motion, the declarations responsible agency officials with attachments consistent with the District of Columbia Circuit's opinion in Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973),  cert. denied, 415 U.S. 977 (1974), and a proposed Order are filed herewith.

Plaintiff should take notice that any factual assertions contained in the documents in support of this motion will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Local Rule 7(h); and Fed. R. Civ. P. 56(e), which provides as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Dated: March 10, 2006.                       Respectfully submitted,

                                             /s/
                                             _____
                                             KENNETH L. WAINSTEIN
                                             D.C. Bar # 451058
                                             United States Attorney


                                             /s/
                                             _____
                                             R. CRAIG LAWRENCE
                                             D.C. Bar # 171538
                                             Assistant United States Attorney


                                             /s/
                                             _____
Of Counsel:                                  HEATHER R. PHILLIPS
                                             C.A. Bar # 19620
Anthony J. Ciccone                           Assistant United States Attorney
FOIA/Privacy Staff                           Civil Division
Executive Office for                         555 4th Street, N.W., Rm E4212
  United States Attorneys                    Washington, DC 20530
Department of Justice                        (202) 514-7139

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 10, 2006 a copy of the foregoing motion, as well as a supporting

memorandum, a statement of material facts, and a supporting declaration (with exhibits) were

served by regular United States mail, postage pre-paid, upon:

> Derrell Gilchrist, Pro Se
> Reg. No. 37284-037
> United States Penitentiary
> P.O. Box 1000
> Lewisburg, PA 17837


_/s/_____
Heather R. Phillips

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DERRELL GILCHRIST,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Civil Action No. 05-1540 (RJL)** |
| ) | **ECF** |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## <u>NOT IN GENUINE DISPUTE</u>

In accordance with Local Rule 7(h), Defendant submits this statement of material facts as to which there is no genuine dispute.

1.      By letter dated June 2, 2004, Plaintiff sent a FOIA/Privacy Act request to the Executive Office for United States Attorneys ("EOUSA") seeking: "The specific order relating to U.S.A. vs. Gilchrist, Docket NO Dkc-02-0245, pertaining to Petite Policy or Order granted to U.S. Attorneys office for the District of Maryland in above cited case for ARMED CAR JACKING to be retried." <u>See</u> Declaration of Anthony J. Ciccone ("Ciccone Dec.") at ¶ 4 and Exhibit 1 thereto.  Attached to the request was a copy of a Departmental press release dated June 27, 2002, entitled "Largo Man Charged in Car Jacking and Four Bank Robberies." <u>Id.</u>

2.      By letter dated July 26, 2004, EOUSA issued an acknowledgment letter noting that the request had been designated No. 04-2365 for processing purposes. <u>See</u> Ciccone Dec. ¶ 5 and Exhibit 2 thereto.

3.      Because Plaintiff sought records relating to his prosecution by the United States Attorney's Office for the District of Maryland (hereafter "USAO-MD"), the USAO-MD conducted the search for responsive records.  The search yielded four pages of responsive

documents, consisting of a one-page fax transmittal (cover) letter, an attached two-page recommendation memorandum from the USAO-MD, and a one page decision memorandum from the Criminal Division of the United States Department of Justice ("Criminal Division"). See Ciccone Dec. ¶¶ 6, 7, 16.

4.       By letter dated October 29, 2004, EOUSA advised Plaintiff that his FOIA/PA request had been processed, and that a three-page document was being withheld in full by EOUSA pursuant to certain specified FOIA/PA exemptions. See Ciccone Dec. ¶ 7 and Exhibit 3 thereto. Plaintiff was further advised that an additional one-page document found in the course of the search for responsive records was being referred by EOUSA to the Department's Criminal Division (the originating component of the document). Id. The Criminal Division ultimately authorized the release in full of the one-page document. Id.; see also Exhibit 4 (attached to Ciccone Dec.).

5.       Subsequent to Plaintiff's June 2, 2004 request (as noted above, designated No. 04-2365 by EOUSA), EOUSA received another inquiry from Plaintiff, via an August 27, 2004 referral memorandum from the Criminal Division, which memorandum stated in pertinent part:

> SUBJECT: Derrell Gilchrist, CRM #200400734-P
>
> We are processing a Privacy Act request from the person named above. We have located the attached records which originated in an office for which you are responsible. We are referring these records to you for direct reply to the requester.

This referred request was designated EOUSA Request No. 04-3179-R. See Ciccone Dec. ¶ 8 and Exhibits 5 and 6 thereto.

6.       The Criminal Division's August 27, 2005 referral memorandum to EOUSA forwarded a three-page document authored by the USAO-MD and found in Criminal Division

files during a search for records responsive to a FOIA/PA inquiry made by Plaintiff on April 15, 2004, to the Criminal Division.  Plaintiff's April 15, 2004 FOIA/PA inquiry to the Criminal Division sought:

> All information pertaining to "Order" granted by Dept. of Justice in USA vs. Gilchrist Docket No: DKC-02-0245, issued in 2002 to Office of the U.S. Attorney Greenbelt MD to permit the prosecution of above case after acquittal in Prince George's County MD of same charge, also called "Petit Order" [sic].

See Ciccone Dec. ¶ 9 and Exhibit 5 thereto.

7.     The three-page document forwarded to EOUSA by the Criminal Division in conjunction with the Criminal Division referral memorandum (which referral request was designated No. 04-3179-R by EOUSA), was the same three-page document that had previously been located by EOUSA in response to EOUSA Request No. 04-2365.  See Ciccone Dec. ¶ 10.

8.     The three-page document referred to EOUSA by the Criminal Division (and additionally located in USAO-MD files pursuant to Request No. 04-2365) consisted of a fax transmittal (cover) sheet, and an attached, two-page recommendation memorandum.  Due to an apparent administrative error, only the substantive, two-page recommendation memorandum was actually processed by EOUSA in connection with Request No. 04-3179-R, while the fax transmittal (cover) sheet was inadvertently overlooked.  See Ciccone Dec. ¶ 11.

9.     On September 30, 2004, EOUSA advised Plaintiff that the two-page memorandum was being withheld in full pursuant to certain specified FOIA/PA exemptions. See Ciccone Dec. ¶ 12 and Exhibit 6 thereto.

10.     By letter dated October 19, 2004, Plaintiff administratively appealed EOUSA's September 30, 2004 decision to withhold the two-page memorandum located in response to

Request No. 04-3179-R.  <u>See</u> Ciccone Dec. ¶ 13 and Exhibit 7 thereto.  The administrative

appeal was received by the Department's Office of Information & Privacy ("OIP") on October

28, 2004, as noted in a November 16, 2004 acknowledgment letter.  <u>See</u> Ciccone Dec. ¶ 13 and

Exhibit 8 thereto.

11.    On April 18, 2005, OIP affirmed EOUSA's withholding of the two-page

memorandum in Request No. 04-3179-R, concluding that the withholding was proper both under

the Privacy Act, 5 U.S.C. § 552a(j)(2), and under FOIA, 5 U.S.C. § 552(b)(5) and (b)(7)(C).  <u>See</u>

Ciccone Dec. ¶ 14 and Exhibit 9 thereto.

12.    By supplemental letter dated July 18, 2005, OIP corrected a prior misstatement

regarding the status of the requester's administrative appeal, stating as follows:

> By letter dated April 18, 2005, I affirmed the EOUSA's action on
> the two pages referred to it.  Subsequently, by letter dated April
> 27, 2007, you were advised that your appeal "is still within our
> current backlog and has not yet been assigned . . . for processing."
> It has been determined by our letter of April 27, 2005, was sent in
> error.  I regret the confusion by this administrative oversight.

Ciccone Dec. ¶ 15 and Exhibit 10 thereto.

13.    In total, four pages of responsive records were located in response to Plaintiff's

requests (including both the direct request to EOUSA, designated No. 04-2365, and the referred

request from the Criminal Division, designated No. 04-3179-R):  (a) a three-page document

consisting of a cover letter and an attached, two-page recommendation memo from the USAO-

MD seeking a waiver of the DOJ's so-called "<u>Petite</u>" policy on dual prosecutions; and (b) a one-

page decision memo from the Criminal Division granting the requested waiver.  Ciccone Dec. ¶

16.

14.    At the administrative processing stage, the Criminal Division's one-page decision

was released in full, but the USAO-MD's transmittal (cover) letter and attached two-page recommendation were withheld in full. In an effort to narrow the dispute, Defendant has decided, after supplemental review, to release the first page of the three-page USAO-MD document, which is the cover letter used by USAO-MD to transmit the attached two-page substantive recommendation memorandum. Ciccone Dec. ¶ 17 and Exhibit 11 thereto.

15.     At the administrative processing stage, the Department consistently acted to protect the two-page recommendation memo from disclosure in each of Plaintiff's two requests, (although the one-page cover letter attached to the two-page substantive memorandum was inadvertently not processed in connection with the second request). More specifically, in Request No. 04-2365, the entire three-page document was processed and withheld pursuant to three cited FOIA/PA exemptions. In Request No. 04-3179-R, only the last two pages of the document – containing the substantive recommendation memorandum– were processed and withheld under the same cited exemptions, while the first page or "cover letter" was apparently overlooked as a responsive document and thus neither processed, nor released. Ciccone Dec. ¶ 21 and Exhibits 3 and 6 thereto.

16.     The two-page memo that was withheld-in-full consists of an intra-Departmental recommendation, dated April 18, 2002, from the USAO-MD to the Criminal Division's Witness Immunity Unit, requesting and recommending a waiver of the so-called Petite policy so as to authorize Federal prosecution against Plaintiff notwithstanding prior state court proceedings. Ciccone Dec. ¶ 23.

17.     On April 15, 2004, the Criminal Division received a letter from Plaintiff seeking:

All information pertaining to "Order" granted by Dept. Of Justice in *USA vs. Gilchrist*[,] Docket No. DKC-02-0245 issued in 2002 to [the] Office of the US Attorney Greenbelt

MD to permit the prosecution of above [the] case after [the] acquittal in Prince Georges Country MD of [the] same [c]harge, also called "Petit Order."

The Criminal Division designated this request as number CRM 200400734-p for processing purposes. See Hsu Declaration ¶ 6 and attached Hsu-Exhibit 1.

18.     In processing requests from individuals seeking information on themselves, the Criminal Division begins by searching its centralized records index, JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records). This system contains information on persons referred to in potential or actual cases and matters of concern to the Criminal Division and correspondence on subjects directed or referred to the Criminal Division. When a search of this Central Index reflects responsive, or potentially responsive records, a search for such records is sent to the section identified as having custody of the records. Hsu Declaration ¶ 11.

19.     In the present matter, a search for Plaintiff's records in the JUSTICE/CRM-001 Privacy Act system of records was undertaken in July 2004. Hsu Declaration ¶ 11. The Criminal Division searched for records under the name of "Derrell Lamont Gilchrist," and revealed no responsive records identifiable with Plaintiff's name. Id. In addition to a search for records in the JUSTICE/CRM-001 system of records, the Criminal Division also searched its Witness Immunity Unit because Plaintiff stated in his April 2004 request that he sought records regarding "Petite Orders."[1] Hsu Declaration ¶ 12. This is the only section of the Criminal Division that can reasonably be expected to maintain responsive information. Id.

_____

[1]  Waivers for the Department of Justice's Petite policy are granted through authorizations issued by the assistant attorney general (or his designee) of the section having authority over the offenses for which federal prosecution is proposed. This is an internal, policy process and no actual court orders are involved.

20.    Pursuant to long-standing FOIA search procedures, a search sheet with a copy of the Plaintiff's request was transmitted to the Witness Immunity Unit.  Hsu Declaration ¶ 13.  The search sheet specified the subject of the search.  Id.  Experienced and designated personnel employed by the section then undertook a search for responsive materials and reported the results to the Criminal Division FOIA/PA Unit.  Id.  The search terms utilized by each section in a Privacy Act request are the requestor's name and any known alias that the requestor has provided.[2]  Hsu Declaration ¶ 13.

21.    The Witness Immunity Unit located a total of four-pages of records responsive to Plaintiff's request.  Hsu Declaration ¶ 14.  Only one of the four-pages located originated in the Criminal Division.  Id.  As discussed above, this record was released to the Plaintiff in full on August 27, 2004.  Id.  The remaining three pages originated in EOUSA and were referred to EOUSA for direct response to Plaintiff.  Id.

22.    The Criminal Division's process allows for an adequate search and ensures that all files likely to contain responsive material, should any exist, are searched and located.  Hsu Declaration ¶ 15.  Moreover, searches are undertaken in the same manner as if the Criminal Division were seeking the information for its own, official purposes.  Id.  By this means, the Criminal Division aims to ensure that its searches fully meet the criteria established under the Freedom of Information Act, the Privacy Act, and interpretative decisional law.  Id.  The one Criminal Division document located in response to these extensive searches was released to

---

[2]  Unlike the FBI or the Federal Bureau of Prisons, the Criminal Division assigns no special identification numbers to individuals.  Nor does it maintain files based on social security numbers.  Nor does it maintain any field offices outside the Washington, D.C. area.  Finally, unlike certain other law enforcement components, the Criminal Division maintains no separate "see reference" or "cross-reference" files requiring separate searches.

Plaintiff in whole.  Id.  The remaining three pages located were referred to the originating

component – EOUSA – for FOIA/PA processing.  Hsu Declaration ¶ 14; accord Ciccone

Declaration ¶8 (noting that this referral was designated EOUSA No. 04-3179-R for processing

purposes).

      23.     Separate and apart from the processing of Plaintiff's request to the Criminal

Division, a thorough search for responsive records was undertaken by the USAO-MD in

connection with Plaintiff's direct request to EOUSA (No 04-2365).  When the USAO-MD

receives a FOIA request, a case file is opened and the matter is referred to the attorney assigned

to the particular case.  Johnston Declaration ¶ 3.  The attorney in the USAO reviews the file in its

entirety, as well as any related electronic files to determine what, if any, documents fall within

the scope of the request.  Id.  The assigned attorney also determines the status of the criminal

case.  Id.  A report is then forwarded to the FOIA Staff at EOUSA regarding the FOIA request

together with a certification of search under oath.  Id.

      24.     Ms. Johnston prosecuted the criminal case against Darrell Lamont Gilchrist with

AUSA Sandra Wilkinson.  Id. ¶ 4.  In August 2004, Ms. Johnston had sole responsibility for the

Gilchrist criminal case.  Id.  By memorandum from the FOIA Staff at EOUSA dated August 4,

2004, USAO-MD was requested to respond to a FOIA request received from Darrell Gilchrist,

which is now the subject of his above-captioned civil action.  Id.  In connection with Gilchrist's

FOIA request, Ms. Johnston personally reviewed his criminal file at USAO-MD, which is where

any responsive documents would be located since Maryland was the prosecuting District.  Id. ¶

6.

      25.     In total, Ms. Johnston located and forwarded four responsive documents to the

FOIA Staff in EOUSA: (1) a two-page "Petite Policy Waiver Request"; (2) a one-page

transmittal letter dated April 18, 2002 signed by Ms. Johnston and addressed to John Bannon,

Witness Immunity Unit, Criminal Division; and (3) a one-page letter, dated April 29, 2002,

signed by John C. Keeney, Deputy Assistant Attorney General, Criminal Division, authorizing

Gilchrist's federal prosecution.  Id. ¶ 8.  Out of an abundance of caution, in March of 2006, Ms.

Johnston once again reviewed the entire Gilchrist criminal case file as well as  related electronic

files, to locate any documents concerning the Petite policy waiver request and authorization.  Id.

¶ 12.

    26.    In particular, and directly contrary to the allegations in Plaintiff's summary

judgment opposition, Ms. Johnston did not locate any documents from the Federal Bureau of

Investigation or the Prince George's County authorities which reference or request that USAO-

MD seek a Petite policy waiver.  Id. ¶ 13.

Dated: March 10, 2006                    Respectfully submitted,

                                         /s/
                                         _____
                                         KENNETH L. WAINSTEIN
                                         D.C. Bar # 451058
                                         United States Attorney


                                          /s/
                                         _____
                                         R. CRAIG LAWRENCE
                                         D.C. Bar # 171538
                                         Assistant United States Attorney


                                          /s/
                                         _____
Of Counsel:                              HEATHER R. PHILLIPS
                                         C.A. Bar # 19620
Anthony J. Ciccone                       Assistant United States Attorney
FOIA/Privacy Staff                       Civil Division
Executive Office for                     555 4th Street, N.W., Rm E4212
  United States Attorneys                Washington, DC 20530
Department of Justice                    (202) 514-7139

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
DERRELL GILCHRIST,                            )
                                              )
                      Plaintiff,              )
        v.                                    )        Civil Action No. 05-1540 (RJL)
                                              )        ECF
U.S. DEPARTMENT OF JUSTICE,                   )
                                              )
                      Defendant.              )
_____ )

MEMORANDUM IN SUPPORT OF DEFENDANT'S
RENEWED MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

On October 16, 2005, Defendant filed its first Motion for Summary Judgment ("MSJ") in

this FOIA case.  On February 1, 2005, Plaintiff filed his Opposition, and Defendant filed its

Reply on February 15, 2006.  On February 24, 2006, the Court issued its Order denying

Defendant's MSJ without prejudice, noting that "Defendant offers no explanation of the search

or searches conducted by either Justice component."  Order at 5.  Defendant hereby submits its

Renewed MSJ, which incorporates a description of the searches for responsive documents

conducted by both the Maryland U.S. Attorney's Office and the Criminal Division.  See

Argument, Part I.  In addition, Defendant has submitted declarations by Deborah Johnston of

USAO MD and Kathy Hsu of DOJ's Criminal Division detailing the searches for responsive

documents conducted by those offices.

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

Privacy Act ("PA"), 5 U.S.C. § 552a, and pertains to the processing of Plaintiff's FOIA-PA

request by the U.S. Department of Justice ("Department" or "DOJ").  The Department has

completed its processing of Plaintiff's information request, produced all responsive, non-exempt

records in its possession, and explained its reliance on FOIA Exemptions b(5) and (b)(7)(C), and

Exemption (j)(2) of the Privacy Act for its withholdings.  There are no material facts in dispute

and the Department is entitled to judgment in its favor as a matter of law.  Accordingly,

summary judgment should be granted pursuant to Fed. R. Civ. P. 56.

## FACTUAL AND PROCEDURAL BACKGROUND

By letter dated June 2, 2004, Plaintiff sent a FOIA/PA request to the Executive Office for

United States Attorneys ("EOUSA") (a component of the Department of Justice) seeking: "The

specific order relating to U.S.A. vs. Gilchrist, Docket NO Dkc-02-0245, pertaining to Petite

Policy or Order granted to U.S. Attorneys office for the District of Maryland in above cited case

for ARMED CAR JACKING to be retried."  See Declaration of Anthony J. Ciccone ("Ciccone

Dec.") at ¶ 4 and Exhibit 1 thereto.  Attached to the request was a copy of a Departmental press

release dated June 27, 2002, entitled "Largo Man Charged in Car Jacking and Four Bank

Robberies."  Id.  EOUSA issued an acknowledgment letter on July 26, 2004, noting that the

request had been designated No. 04-2365 for processing purposes.  See Ciccone Dec. ¶ 5 and

Exhibit 2 thereto.

Because Plaintiff sought records relating to his prosecution by the United States

Attorney's Office for the District of Maryland (hereafter "USAO-MD"), the USAO-MD

conducted the search for responsive records.  The search yielded a total of four pages of

responsive documents, consisting of a one-page fax transmittal (cover) letter, an attached two-

page recommendation memorandum dated April 18, 2002, from the USAO-MD to the

Department's Criminal Division, and a one page decision memorandum from the Criminal

Division.  See Ciccone Dec. ¶¶ 6, 16.

By letter dated October 29, 2004, EOUSA advised Plaintiff that his FOIA/PA request had been processed, and that a three-page document was being withheld in full by EOUSA pursuant to certain specified FOIA/PA exemptions.[3]  See Ciccone Dec. ¶ 7 and Exhibit 3 thereto.  Plaintiff was further advised that an additional one-page document found in the course of the search for responsive records was being referred by EOUSA to the Department's Criminal Division (the originating component of the document).  Id.  The Criminal Division ultimately authorized the release in full of the one-page decisional document.  Id.; see also Exhibit 4 (attached to Ciccone Dec.).

Subsequent to Plaintiff's June 2, 2004 request (No. 04-2365, above), EOUSA received another inquiry from Plaintiff, via an August 27, 2004 referral memorandum from the Criminal Division, which memorandum stated in pertinent part:

> SUBJECT: Derrell Gilchrist, CRM #200400734-P
>
> We are processing a Privacy Act request from the person named above.  We have located the attached records which originated in an office for which you are responsible.  We are referring these records to you for direct reply to the requester.

This referred request was designated EOUSA Request No. 04-3179-R and Criminal Division number CRM 200400734-p.  See Ciccone Dec. ¶ 8 and Exhibits 5 and 6 thereto.  The Criminal Division's August 27, 2005 referral memorandum to EOUSA forwarded a three-page document authored by the USAO-MD and found in Criminal Division files during a search for records responsive to a FOIA/PA inquiry made by Plaintiff on April 15, 2004, to the Criminal Division.

---

[3]  Notably, Plaintiff did not pursue his administrative remedies with respect to the Department's October 29, 2004 determination to withhold three pages, including the same April 18, 2002 recommendation memorandum at issue in this case.

Plaintiff's April 15, 2004 FOIA/PA inquiry to the Criminal Division had sought:

> All information pertaining to "Order" granted by Dept. of Justice
> in USA vs. Gilchrist Docket No: DKC-02-0245, issued in 2002 to
> Office of the U.S. Attorney Greenbelt MD to permit the prosecu-
> tion of above case after acquittal in Prince George's County MD of
> same charge, also called "Petit Order" [sic].

See Ciccone Dec. ¶ 9 and Exhibit 5 thereto.

The three-page document forwarded to EOUSA by the Criminal Division in conjunction with the Criminal Division referral memorandum (which referral request was designated No. 04-3179-R by EOUSA), was the same three-page document that had previously been located by EOUSA in response to EOUSA Request No. 04-2365.  See Ciccone Dec. ¶ 10.  As such, the three-page document referred to EOUSA by the Criminal Division (and additionally located in USAO-MD files pursuant to Request No. 04-2365) consisted of a fax transmittal (cover) letter, and an attached, two-page recommendation memorandum.  Due to an apparent administrative oversight in processing Plaintiff's Request No. 04-3179-R, only the substantive, two-page recommendation memorandum was actually processed by EOUSA, while the fax transmittal (cover) letter was inadvertently overlooked, and neither processed nor released.  See Ciccone Dec. ¶ 11.

On September 30, 2004, EOUSA advised Plaintiff that the two-page memorandum was being withheld in full pursuant to certain specified FOIA/PA exemptions.  See Ciccone Dec. ¶ 12 and Exhibit 6 thereto.  By letter dated October 19, 2004, Plaintiff administratively appealed EOUSA's September 30, 2004 decision to withhold the two-page memorandum located in response to Request No. 04-3179-R.  See Ciccone Dec. ¶ 13 and Exhibit 7 thereto.  The administrative appeal was received by the Department's Office of Information & Privacy

("OIP") on October 28, 2004, as noted in a November 16, 2004 acknowledgment letter.  See

Ciccone Dec. ¶ 13 and Exhibit 8 thereto.

On April 18, 2005, OIP affirmed EOUSA's withholding of the two-page memorandum in

Request No. 04-3179-R, concluding that the withholding was proper under the Privacy Act, 5

U.S.C. § 552a(j)(2), and under FOIA, 5 U.S.C. § 552(b)(5) and (b)(7)(C).[4]  See Ciccone Dec. ¶

14 and Exhibit 9 thereto.  In addition, by supplemental letter dated July 18, 2005, OIP corrected

a prior misstatement regarding the status of the requester's administrative appeal, stating as

follows:

> By letter dated April 18, 2005, I affirmed the EOUSA's action on
> the two pages referred to it.  Subsequently, by letter dated April
> 27, 2007, you were advised that your appeal "is still within our
> current backlog and has not yet been assigned . . . for processing."
> It has been determined by our letter of April 27, 2005, was sent in
> error.  I regret the confusion by this administrative oversight.

Ciccone Dec. ¶ 15 and Exhibit 10 thereto; cf Complaint ¶ 7 (failing to note OIP's July 19, 2005

correction).

As noted above, in total, four pages of responsive records were located in response to

Plaintiff's two requests (the first being the direct request to EOUSA, designated No. 04-2365,

and the second, the referred request from the Criminal Division, designated No. 04-3179-R):  (1)

a three-page document consisting of a cover letter and an attached, two-page recommendation

memo from the USAO-MD seeking a waiver of the DOJ's so-called "Petite" policy on dual

prosecutions; and (2) a one-page decision memo from the Criminal Division granting the

---

[4]  While FOIA Exemption 7(D) (regarding confidential sources) was also asserted by EOUSA in
No. 04-3179-R, it was not asserted in No. 04-2365, nor was it relied on by OIP in its denial of
Plaintiff's appeal of No. 04-3179-R, and it is therefore not being asserted here.

requested waiver.  Ciccone Dec. ¶ 16.

At the administrative processing stage, the Criminal Division's one-page decision was released in full, but the USAO-MD's transmittal (cover) letter and attached two-page recommendation were withheld in full.  In an effort to narrow the dispute, Defendant has decided, after supplemental review, to release the first page of the three-page USAO-MD document, which is the cover letter used by USAO-MD to transmit the attached, withheld in full, two-page substantive recommendation memorandum.[5]  Ciccone Dec. ¶ 17 and Exhibit 10 thereto.  Throughout the administrative processing of Plaintiff's FOIA/PA request, the Department consistently acted to protect the two-page recommendation memo from disclosure in each of Plaintiff's two requests, although the one-page cover letter attached to the two-page substantive memorandum was inadvertently not processed in connection with the second request.  More specifically, in Request No. 04-2365, the entire three-page document was processed and withheld pursuant to three cited FOIA/PA exemptions.  In Request No. 04-3179-R only the last two pages of the document – containing the substantive recommendation memorandum – were processed and withheld under the same cited exemptions, while the first page or "cover letter" was apparently overlooked as a responsive document and thus not processed.  Ciccone Dec. ¶ 21 and Exhibits 3 and 6 thereto.

---

[5]  Although the one-page cover letter is an integral part of the three-page document – and, indeed, it is the only page thereof to identify the sender, recipient, date, and other identifying particulars – it does not disclose the underlying basis for the Petite policy waiver recommendation that is at the heart of this case.  Thus, after a supplemental review for segregability, the one-page cover letter is being released, as a "discretionary" release, solely for purposes of this litigation, and solely to reduce the issue *sub judice* to the releasability of the underlying two-page waiver recommendation memorandum, and without any admission as to the qualifications of such cover letters under applicable FOIA/PA exemptions.  See Ciccone Dec. ¶ 22 and Exhibit 11 thereto.

The two-page memo that was withheld-in-full consists of an intra-Departmental recommendation, dated April 18, 2002, from the USAO-MD to the Criminal Division's Witness Immunity Unit requesting and recommending a waiver of the so-called <u>Petite</u> policy so as to authorize Federal prosecution against Plaintiff notwithstanding a prior state court acquittal. Ciccone Dec. ¶ 23.

## <u>STANDARD OF REVIEW</u>

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides that the "judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Where no genuine dispute exists as to any material fact, summary judgment is required. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. <u>Id.</u> at 248. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that <u>there is an absence of evidence to support the non-moving party's case</u>." <u>Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.</u>, 833 F.2d 1560, 1563 (Fed. Cir. 1987), (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) (emphasis in original)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find he is entitled to relief. In <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 322-323, the Supreme Court held that, in responding to a motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an

essential element of [his] case" to establish a genuine dispute.  In another opinion that the

Supreme issued on the same day it issued Celotex, the Court explained the circumstances under

which summary judgment is appropriate:

> If the evidence is merely colorable, . . . or is not significantly probative, . . .
> summary judgment may be granted . . . . [T]he mere existence of a scintilla of
> evidence in support of the plaintiff's position will be insufficient; there must be
> evidence on which the jury could reasonably find for the plaintiff.

Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50, 252.  See Johnson v. Digital Equipment

Corp., 836 F. Supp. 14, 15 (D.D.C. 1993).  In Celotex, the Supreme Court further instructed that

the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut,

but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the

just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327.

FOIA cases are typically resolved on summary judgment.  See Cooper Cameron Corp. v.

Dep't of Labor, 280 F.3d 539, 543 (5th Cir. 2002).  To discharge its burden, the agency must

prove that each document that falls within the class of requested records has either been

produced, is unidentifiable, or is exempt.  See National Cable Television Ass'n, Inc. v. Federal

Communications Commission, 479 F.2d 183, 186 (D.C. Cir. 1973).  In a FOIA case, the Court

may award summary judgment solely on the basis of information provided in affidavits or

declarations when the affidavits or declarations describe "the documents and the justifications

for nondisclosure with reasonably specific detail, demonstrate that the information withheld

logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  Military Audit Project v. Casey,

656 F.2d 724, 738 (D.C. Cir. 1981).  See also Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485

(D.C. Cir. 1984); Public Citizen, Inc. v. Dep't of State, 100 F. Supp.2d 10, 16 (D.D.C. 2000)

(quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983);

Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329; (9ᵗʰ Cir. 1995); Bowen v.

FDA, 925 F.2d 1224, 1227 (9th Cir. 1991).

These declarations or affidavits (singly or collectively) are often referred to as a Vaughn

index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S.

977 (1974).[6]  There is no set formula for a Vaughn index.  "[I]t is well established that the

critical elements of the Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976

F. Supp. 23, 35 (D.D.C. 1997).  "The materials provided by the agency may take any form so

long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."

Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  See also

Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dep't of Justice,

844 F.2d 126, 129 (3d Cir. 1988).[7]

The Court exercises de novo review over FOIA matters, and the burden is on the agency

to justify all nondisclosures.  See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm.

---

[6]  "A Vaughn index must:  (1) identify each document withheld; (2) state the statutory exemption
claimed; and (3) explain how disclosure would damage the interests protected by the claimed
exemption."  Citizens Commission on Human Rights, 45 F.3d at 1326.  "Of course the
explanation of the exemption claim and the descriptions of withheld material need not be so
detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently
specific to permit a reasoned judgment as to whether the material is actually exempt under
FOIA."  Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

[7]  "All that is required, and that is the least that is required, is that the requester and the trial
judge be able to derive from the index a clear explanation of why each document or portion of a
document withheld is putatively exempt from disclosure."  Id.  "The degree of specificity of
itemization, justification, and correlation required in a particular case will, however, depend on
the nature of the document at issue and the particular exemption asserted."  Information
Acquisition Corp. v. Dep't of Justice, 444 F. Supp. 458, 462 (D.D.C. 1978).

for Freedom of the Press, 489 U.S. 749, 755 (1989).

      In support of this motion the Department has provided declarations and a <u>Vaughn</u> index. EOUSA's declaration was prepared by Anthony J. Ciccone, an attorney in the Department currently assigned to EOUSA's FOIA/Privacy Staff and discusses the processing of EOUSA Request Nos. 04-2365 and 04-3179-R. Mr. Ciccone's official duties require him to be familiar with the procedures followed by the Department in responding to Plaintiff's FOIA-PA requests. <u>See</u> Ciccone Dec. ¶¶ 1-3. Mr. Ciccone's declaration explains the search undertaken by the Department, the application of exemptions, and the justifications for the exemptions on the withheld material. Mr. Ciccone thoroughly sets forth where the Department withheld information in its release to Plaintiff and why the information was withheld.

      The Criminal Division's Declaration was prepared by Kathy Hsu, an attorney in the Criminal Division in the Office of Enforcement Operations. <u>See</u> Declaration of Kathy Hsu, attached as Exhibit 2. Her declaration discusses the processing of Criminal Division Request No. CRM 200400735-p. Ms. Hsu's specific assignment at the present time is that of Litigation Attorney for the Criminal Division's Freedom of Information Act/Privacy Act Unit (FOIA/PA Unit). <u>Id.</u> In such capacity, Ms. Hsu's duties include reviewing complaints in lawsuits filed under both the Freedom of Information Act (FOIA), 5 U.S.C. § 552 <i>et seq</i>., and the Privacy Act (PA), 5 U.S.C. § 552a <i>et seq</i>., and providing litigation support and assistance to Assistant United States Attorneys and to Department trial attorneys litigating these cases in District Court. Hsu Declaration ¶ 2. In conjunction with these duties, Ms. Hsu reviews processing files that have been compiled by the paralegal processors and reviewed by supervisory paralegals and/or by the FOIA/PA Unit Chief in responding to FOIA/PA requests received by the Unit. <u>Id.</u> Ms. Hsu also

consults with the Unit Chief, who supervises the Unit's processing of FOIA and PA requests, and with the supervisory paralegals to confirm that determinations to withhold or to release records of the Criminal Division have been made in accordance with the provisions of both the FOIA and the PA, and with Department of Justice regulations - 28 C.F.R. § 16.1 *et seq.* Id. Ms. Hsu's Declaration thoroughly explains the search undertaken by the Criminal Decision and the decision to refer the documents found to the originating unit, EOUSA. See generally Hsu Declaration.

In addition, a declaration by Deborah Johnston of the U.S. Attorney's Office in Maryland has been provided, describing the search for responsive documents conducted by that office in connection with EOUSA Request No. 04-2365. See generally Declaration of Deborah Johnston. Ms. Johnston is an Assistant United States Attorney and Senior Litigation Counsel for the District of Maryland. Id. ¶ 2. In such capacity, her duties are to investigate and prosecute violations of the federal criminal laws. Id. This responsibility includes post-conviction litigation, including direct appeals, petitions for post-conviction relief under 28 U.S.C. § 2255 and requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a. Id. Ms. Johnston's Declaration thoroughly describes the search for responsive records she undertook on behalf of the USAO-MD.

In short, the Declarations of Mr. Ciccone, Ms. Johnston, and Ms. Hsu provide the Court with the requisite basis for review of the Department's actions in response to Plaintiff's FOIA request.

## ARGUMENT

11

I.    **The Maryland U.S. Attorney's Office and the Criminal Division Conducted Reasonable and Adequate Search for Responsive Documents.**

The adequacy of an agency's search under the FOIA is "measured by a `standard of reasonableness,'" Weisberg v. United States Dep't of Justice, 705 F.2d 1344, 1352 (D.C. Cir. 1983) (quoting McGehee v. CIA, 697 F.2d 1095, 1100 (D.C. Cir. 1983)), which varies according to the circumstances unique to each case. Id. (quoting Founding Church of Scientology v. Nat'l Sec. Agency, 610 F.2d 824, 834 (D.C. Cir. 1979)). The reasonableness inquiry does not examine "the fruits of the search," but instead focuses upon "the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 ( D.C. Cir. 2003). Thus, the fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original).

At the summary judgment stage, the agency is entitled to prevail if it shows "beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg, 705 F.2d at 1351. To meet its burden, the agency must proffer affidavits or declarations that shed sufficient light on "the scope and method of the search conducted by the agency." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (per curiam). Simply put, these statements must be "`relatively detailed' and nonconclusory and must be submitted in good faith." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (footnote omitted), quoted in Perry, 684 F.2d at 127. Because agency affidavits enjoy a presumption of good faith, Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam), usually it is only the first two factors that are at issue.

Once the agency has successfully satisfied its prima facie obligation, the requester may rebut by presenting countervailing evidence, including evidence of bad faith. Meeropol, 790 F.2d at 958; Founding Church of Scientology, 610 F.2d at 836. "[P]urely speculative claims about the existence and discoverability of other documents," however, do not suffice to discredit agency affidavits. Ground Saucer Watch, 692 F.2d at 771. Moreover, even in situations where the agency acknowledges that the requested document still exists or once existed, "the failure to turn up this document does not alone render the search inadequate." Nation Magazine, Washington Bureau v. United States Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (citing Perry, 684 F.2d at 128); accord Iturralde, 315 F.3d at 315 ("[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate."). In such situations, an otherwise reasonable search remains adequate unless circumstances reveal "positive indications of overlooked materials." Founding Church of Scientology, 610 F.2d at 837; accord Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 327-28 (D.C. Cir. 1999). Thus, the FOIA does not require an agency to "account for documents which the requester has in some way identified if it has made a diligent search for those documents in places in which they might be expected to be found." Miller v. United States Dep't of State, 779 F.2d 1378, 1385 (8thCir. 1985), cited with approval in Iturralde, 315 F.3d at 315.

The Court should grant summary judgment because the Johnston and Hsu Declarations submitted in support of this motion sufficiently explain the procedures used to locate responsive documents, such that no substantial doubt remains as to the efficacy of the search methodology employed by Defendant to respond to Plaintiff's FOIA request. See Iturralde, 315 F.3d at

13

314-15; <u>Founding Church of Scientology</u>, 610 F.2d at 834-35.

Specifically, on April 15, 2004, the Criminal Division received a letter from Plaintiff

seeking:

> All information pertaining to "Order" granted by Dept. Of Justice in *USA vs. Gilchrist*[,] Docket No. DKC-02-0245 issued in 2002 to [the] Office of the US Attorney Greenbelt MD to permit the prosecution of above [the] case after [the] acquittal in Prince Georges Country MD of [the] same [c]harge, also called "Petit Order."

<u>See</u> Hsu Declaration ¶ 6 and attached Hsu-Exhibit 1.  The Criminal Division designated this

request as number CRM 200400734-p for processing purposes.

By a letter addressed to the Criminal Division from Plaintiff dated May 13, 2004,

Plaintiff followed-up on the status of his request.  Hsu Declaration ¶ 7 and attached Exhibit Hsu-

2.  On June 9, 2004, the FOIA/PA Unit acknowledged receipt of Plaintiff's April 15, 2004

request letter.  Hsu Declaration ¶ 8 and attached Exhibit Hsu-3.  Plaintiff was advised that his

case had been assigned case number CRM-200400734P, and a search of responsive records

relevant to his request would be conducted and once completed he would be notified of the

disposition of his request.  <u>Id.</u>  On August 27, 2004, the Criminal Division responded to

Plaintiff's request.[8]  Hsu Declaration ¶ 9 and attached Exhibit Hsu-4.  Plaintiff was notified that

one record relevant to his request was located.  <u>Id.</u>  The record was a one-page letter dated April

29, 2002, from John C. Keeney, Deputy Assistant Attorney General, Criminal Division, to

Thomas M. DiBiagio, United States Attorney for the District of Maryland, regarding the "Dual

---

[8]  The Criminal Division's response letter inadvertently misidentifies the date of Plaintiff's request as May 13, 2004, the date of his status request, rather than April 15, 2004, the date of his actual request.

14

prosecution of Darrell Lamont Gilchrist." Id. This record was released to Plaintiff in full.[9] Hsu Declaration ¶ 10 and attached Exhibit Hsu-4.

In processing requests from individuals seeking information on themselves, the Criminal Division begins by searching its centralized records index, JUSTICE/CRM-001 (Central Criminal Division Index File and Associated Records). Hsu Declaration ¶ 11. This system contains information on persons referred to in potential or actual cases and matters of concern to the Criminal Division and correspondence on subjects directed or referred to the Criminal Division. Id. When a search of this Central Index reflects responsive, or potentially responsive records, a search for such records is sent to the section identified as having custody of the records. Id.

In the present matter, a search for Plaintiff's records in the JUSTICE/CRM-001 Privacy Act system of records was undertaken in July 2004. Hsu Declaration ¶ 11. The Criminal Division searched for records under the name of "Derrell Lamont Gilchrist," and revealed no responsive records identifiable with Plaintiff's name. Id. In addition to a search for records in the JUSTICE/CRM-001 system of records, the Criminal Division also searched its Witness Immunity Unit because Plaintiff stated in his April 2004 request that he sought records regarding "Petite Orders."[10] Hsu Declaration ¶ 12. This is the only section of the Criminal Division that

---

[9] As already discussed in the Declaration of Anthony J. Ciccone (pages 6 and 7), on October 29, 2002, EOUSA referred a one-page document to the Criminal Division for direct response to Plaintiff. The Criminal Division assigned the referral case number CRM-200401453 and released the document to Plaintiff in full. This is the identical document discussed above.

[10] Waivers for the Department of Justice's Petite policy are granted through authorizations issued by the assistant attorney general (or his designee) of the section having authority over the offenses for which federal prosecution is proposed. This is an internal, policy process and no actual court orders are involved.

can reasonably be expected to maintain responsive information.  Id.

Pursuant to long-standing FOIA search procedures, a search sheet with a copy of the
Plaintiff's request was transmitted to the Witness Immunity Unit.  Hsu Declaration ¶ 13.  The
search sheet specified the subject of the search.  Id.  Experienced and designated personnel
employed by the section then undertook a search for responsive materials and reported the
results to the Criminal Division FOIA/PA Unit.  Id.  The search terms utilized by each section in
a Privacy Act request are the requestor's name and any known alias that the requestor has
provided.[11]  Hsu Declaration ¶ 13.

The Witness Immunity Unit located a total of four-pages of records responsive to
Plaintiff's request.  Hsu Declaration ¶ 14.  Only one of the four-pages located originated in the
Criminal Division.  Id.  As discussed above, this record was released to the Plaintiff in full on
August 27, 2004.  Id.  The remaining three pages originated in EOUSA and were referred to
EOUSA for direct response to Plaintiff.  Id.

The Criminal Division's process allows for an adequate search and ensures that all files
likely to contain responsive material, should any exist, are searched and located.  Hsu
Declaration ¶ 15.  Moreover, searches are undertaken in the same manner as if the Criminal
Division were seeking the information for its own, official purposes.  Id.  By this means, the
Criminal Division aims to ensure that its searches fully meet the criteria established under the
Freedom of Information Act, the Privacy Act, and interpretative decisional law.  Id.  The one

---

[11]  Unlike the FBI or the Federal Bureau of Prisons, the Criminal Division assigns no special
identification numbers to individuals.  Nor does it maintain files based on social security
numbers.  Nor does it maintain any field offices outside the Washington, D.C. area.  Finally,
unlike certain other law enforcement components, the Criminal Division maintains no separate
"see reference" or "cross-reference" files requiring separate searches.

Criminal Division document located in response to these extensive searches was released to

Plaintiff in whole.  Id.  The remaining three pages located were referred to the originating

component – EOUSA – for FOIA/PA processing.  Hsu Declaration ¶ 14; accord Ciccone

Declaration ¶8 (noting that this referral was designated EOUSA No. 04-3179-R for processing

purposes).

Separate and apart from the processing of Plaintiff's request to the Criminal Division, a

thorough search for responsive records was undertaken by the USAO-MD in connection with

Plaintiff's direct request to EOUSA (No 04-2365).  When the USAO-MD receives a FOIA

request, a case file is opened and the matter is referred to the attorney assigned to the particular

case.  Johnston Declaration ¶ 3.  The attorney in the USAO reviews the file in its entirety, as

well as any related electronic files to determine what, if any, documents fall within the scope of

the request.  Id.  The assigned attorney also determines the status of the criminal case.  Id.  A

report is then forwarded to the FOIA Staff at EOUSA regarding the FOIA request together with

a certification of search under oath.  Id.

Ms. Johnston prosecuted the criminal case against Darrell Lamont Gilchrist with AUSA

Sandra Wilkinson.  Id. ¶ 4.  In August 2004, Ms. Johnston had sole responsibility for the

Gilchrist criminal case.  Id.  By memorandum from the FOIA Staff at EOUSA dated August 4,

2004, USAO-MD was requested to respond to a FOIA request received from Darrell Gilchrist,

which is now the subject of his above-captioned civil action.  Id.  In connection with Gilchrist's

FOIA request, Ms. Johnston personally reviewed his criminal file at USAO-MD, which is where

any responsive documents would be located since Maryland was the prosecuting District.  Id. ¶

6.

In total, Ms. Johnston located and forwarded four responsive documents to the FOIA Staff in EOUSA: (1) a two-page "Petite Policy Waiver Request"; (2) a one-page transmittal letter dated April 18, 2002 signed by Ms. Johnston and addressed to John Bannon, Witness Immunity Unit, Criminal Division; and (3) a one-page letter, dated April 29, 2002, signed by John C. Keeney, Deputy Assistant Attorney General, Criminal Division, authorizing Gilchrist's federal prosecution. Id. ¶ 8. Out of an abundance of caution, in March of 2006, Ms. Johnston once again reviewed the entire Gilchrist criminal case file as well as related electronic files, to locate any documents concerning the Petite policy waiver request and authorization. Id. ¶ 12.

In particular, and directly contrary to the allegations in Plaintiff's summary judgment opposition, Ms. Johnston did not locate any documents from the Federal Bureau of Investigation or the Prince George's County authorities which reference or request that USAO-MD seek a Petite policy waiver. Id. ¶ 13.

The Johnston and Hsu declarations are a clear, concise, and non-conclusory description of the searches undertaken by Maryland USAO and DOJ's Criminal Division to locate responsive records. The declarations demonstrate that the searches were reasonable, thorough and adequate. All responsive records related to the Petite order at issue were retrieved from those systems of records most likely to have responsive records. See Church of Scientology, 30 F.3d at 230 (search done of the United States Attorney's Office computerized records systems was adequate). Thus, the search was demonstratively adequate and consistent with all FOIA procedures designed to ensure a reasonable search for relevant documents.

II.    **The Department Properly Applied Privacy Act and FOIA Exemptions.**

   A.    **Privacy Act Exemption (j)(2) Applies to All of the Responsive Records**

To justify permanently withholding or redacting the records Plaintiff requested, and which were withheld in full by the Department, the Department must show that they are subject both to a Privacy Act exemption and a FOIA exemption.  See Martin v. Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  The Department has made the necessary showing here.

Exemption (j)(2) authorizes an agency to promulgate rules to exempt certain systems of records from (among other things) subsection (d) of the Privacy Act -- the subsection providing an individual the right of access to records pertaining to himself.  5 U.S.C. § 552a(j)(2).  The exemption applies to systems of records that are

> maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of (A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status;  (B) information compiled for the purpose of a criminal investigation, including  reports of informants and investigators, and associated with an identifiable individual;  or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

Id.  The rules must explain "the reasons why the system of records is to be exempted from a provision of this section."  Id.  The Department has promulgated such regulations at 28 C.F.R. § 16.81(a)(1), exempting USAO criminal case files from the PA's access provisions.

The Department of Justice clearly is an agency whose principal function pertains to the enforcement of criminal laws.  Moreover, the records at issue here – the two-page recommen-dation memo from USAO-MD seeking waiver of the Department's Petite policy with respect to

the prosecution of Plaintiff under federal law – are part of the Department's Privacy Act system of records known as JUSTICE/USA-007. Ciccone Dec. ¶ 25. The records maintained in the JUSTICE/USA-007 system consist of criminal case files compiled for law enforcement purposes, so they meet the requirement of § 552a(j)(2)(B). <u>See</u> Ciccone Dec. ¶ 25. These criminal case files also contain information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual and are retrievable by name of an individual or organization, so they also meet the alternative requirement of § 552a(j)(2)(C). <u>See</u> Ciccone Dec. ¶¶ 25-28.

In short, in the instant case, Plaintiff seeks information maintained in the criminal case files of the USAO-MD pertaining to criminal law enforcement within the meaning of 5 U.S.C. § 552a(j)(2) and 28 C.F.R. § 16.81. Ciccone Dec. ¶ 28. Those case files contain information directly associated with the investigation and prosecution of Plaintiff, including sensitive law enforcement reports and recommendations associated with an identifiable individual and retrievable by name or other personal identifier. Ciccone Dec. ¶ 28. As such, the USAO-MD's two-page recommendation memo meets all of the requirements for exemption from the access provisions of the Privacy Act pursuant to Exemption (j)(2). It follows that Plaintiff cannot rely on the Privacy Act to obtain any of the records at issue. Instead, Plaintiff is only entitled to access records about him pursuant to the FOIA, and then only to the extent that the exemptions to the FOIA do not apply. <u>See</u> <u>Martin</u>, 819 F.2d at 1184.

**B.     The DOJ Properly Applied FOIA Exemption (b)(5).**

The Department properly withheld the two-page recommendation memorandum pursuant to 5 U.S.C. 552(b)(5) ("Exemption 5"). Exemption 5 exempts from disclosure "inter-agency or

intra-agency memorandums or letters which would not be available by law to a party . . . in

litigation with the agency." 5 U.S.C. § 552(b)(5). Accordingly, Exemption 5 ensures that the

public cannot obtain, through FOIA, documents "which a private party could not discover in

litigation with the agency." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975), citing

EPA v. Mink, 410 U.S. 73, 85-86 (1973). The exemption incorporates the attorney-client

privilege, the attorney work-product privilege, and the executive "deliberative process" privilege

that protects candid internal discussion of legal or policy matters[.]" Maricopa Audubon Society

v. United States Forest Serv., 108 F.3d 1082, 1084 n.1 (9th Cir. 1997). The Department invoked

Exemption 5 in connection with the withheld memo to protect sensitive law enforcement

information and recommendations covered by the deliberative process and attorney work product

privileges. Ciccone Dec. ¶ 29.

      "The deliberative process privilege, also known as the 'executive' or 'governmental'

privilege serves many purposes." Eugene Burger Management Corp. v. United States Dep't of

Housing & Urban Dev., 192 F.R.D. 1, 4 (D.D.C. 1999). The main purpose of this privilege

"which is well established in the law, is . . . to 'prevent injury to the quality of agency

decisions.'" Cofield, et al. v. City of LaGrange, Georgia, 913 F. Supp. 608, 615 (D.D.C. 1996)

(quoting NLRB v. Sears Roebuck & Co., 421 U.S. 132, 151 (1975)). The deliberative process

privilege prevents harm to the quality of agency decisions by shielding the opinions, conclusions

and reasoning used in the administrative and decision-making process of the Government. See

United States v. Morgan, (Morgan IV), 313 U.S. 40, 422 (1941); Petroleum Info Corp. v.

Department of the Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992); Access Reports v. Department

of Justice, 926 F.2d 1192, 1194-1195 (D.C. Cir. 1991); United States v. Farley, 11 F.3d 1385,

1389 (7th Cir. 1993).

The privilege is designed to encourage frank and uninhibited communication among government officials in the course of creating public policy.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149-51 (1975); Petroleum Info Corp., 976 F.2d at 1434; Access Reports, 926 F.2d at 1194-95; Farley, 11 F.3d at 1389.  The deliberative process privilege remains even after a final decision has been made, because "disclosure at any time could inhibit the free flow of advice."  Federal Open Market Comm. v. Merrill, 443 U.S. 340, 360 (1979).  The privilege protects the consultative functions of the Government by preserving the confidentiality of opinions, recommendations, and deliberations which constitute part of the process by which government decisions are made and Government policies are formulated.   Jordan v. United States Dep't of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc).

For a document to be covered by the deliberative process privilege, two requirements must be satisfied.  First, it must be predecisional,[12] i.e., "antecedent to the adoption of agency policy."  Jordan v. Department of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc).  Second, the document must be deliberative in nature, i.e., it must be "a direct part of the deliberative

---

[12]   "A 'predecisional document' is one 'prepared in order to assist an agency decision maker in arriving at his decision' and may include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'  A predecisional document is part of the 'deliberative process' if 'disclosure of [the] materials would expose an agency's decision making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'"  Formaldehyde Inst. v. Department of Health & Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989).  "In other words, the document is considered to be part of the 'deliberative process' as long as it is 'actually . . . related to the process by which policies are formulated.' Jordan v. United States Dep't of Justice, 591 F.2d 753] at 774 [D.C. Cir. 1978]."  National Wildlife Fed'n, supra, 861 F.2d at 1118 (emphasis added).

process in that it makes recommendations or expresses opinions on legal or policy matters."

Vaughn v. Rosen, 523 F.2d 1135, 1143-44 (D.C. Cir. 1975).  Deliberative documents frequently

consist of "advisory opinions, recommendations, and deliberations comprising part of a process

by which governmental decisions and policies are formulated."  NLRB v. Sears, Roebuck & Co.,

421 U.S. at 150.  Thus, the exemption covers recommendations, draft documents, proposals,

analyzes, suggestions, discussions, and other subjective documents that reflect the give-and-take

of the consultative process.  Coastal States, 617 F.2d at 866.

      The attorney work-product privilege protects documents and other memoranda, prepared

by an attorney or others at the attorney's direction in contemplation of litigation, which set forth

the attorney's theory of the case and litigation strategy.  Hickman v. Taylor, 329 U.S. 495, 509-

11, 67 S. Ct. 385, 91 L. Ed. 451 (1947); A. Michael's Piano, Inc. v. Federal Trade Commission,

18 F.3d 138, 146 (2d Cir. 1994).  The Hickman Court recognized that "it is essential that a

lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing

parties and their counsel."  Coastal States Gas Corp. v. Dept. of Energy, 617 F.2d 854, at 864

(D.C. Cir. 1980), quoting Hickman.

      The protections of Exemption 5 as to the attorney work-product privilege, as well as the

other privileges, are not limited to civil litigation.  Rather, courts have either explicitly or

implicitly recognized that the work-product doctrine is applicable to criminal prosecutions when

the courts have upheld the nondisclosure of documents prepared in the context of a criminal

investigation/prosecution pursuant to the (b)(5) Exemption.  See Antonelli v. Sullivan, 732 F.2d

560, 561 (7th Cir. 1983); Ferri v. U.S. Dept. of Justice, 573 F. Supp. 852, n. 33 (W.D. Pa. 1983);

Harvey v. U.S. Dept. of Justice, 747 F. Supp. 29, 37 (D.D.C. 1990); Durham v. U.S. Dept. of

Justice, 829 F. Supp. 428, 433 (D.D.C. 1993); Jimenez v. FBI, 938 F. Supp. 21, 28 (D.D.C.

1996).  Further, Fed.R.Crim.Proc. 16(a)(2) excludes from disclosure the discovery or inspection

of reports, memoranda, or other internal government documents made by the attorney for the

government or any other government agent investigating or prosecuting the case.  "[U]nder Rule

16(a)(2), [a defendant] may not examine Government work product in connection with his case."

United States v. Armstrong, 517 U.S. 456 (1996).

　　　　Further, the courts have held that "if material is exempt from FOIA disclosure because of

the attorney work product privilege, the exemption does not terminate at the close of the

litigation for which the material was prepared."  See FTC v. Grolier, Inc., 462 U.S. 19, 28

(1983).  Rather "attorney work product is exempt from mandatory disclosure without regard to

the status of the litigation for which it was prepared."  Grove v. Dept. of Justice, et al., 802 F.

Supp. 506, 514 (D.D.C. 1992).

　　　　As noted above, the Department claimed exemption (b)(5) for two of the three primary

privileges: attorney work-product and deliberative process.  See Ciccone Dec. ¶ 29-32.  The

withheld April 18, 2002 memo contains the work product and prosecutorial recommendations of

an Assistant United States Attorney in the USAO-MD to Departmental decision-makers.  Id.

Specifically, the withheld memo reflects a prosecutor's interpretations and evaluations of the

pertinent facts and law, as well as legal opinions pertinent to the requester's criminal case and

the Federal interest therein.  Id.  The April 18, 2002 memo was prepared by or at the request or

direction of an attorney, and made in anticipation of litigation.  Id.  It recommends law

enforcement options and seeks approval by higher decision-makers.  Id.  While the final decision

on that recommendation was duly released in full to Plaintiff (see Ciccone Dec. ¶ 7 and Exhibit 4

24

attached thereto, reproducing the Criminal Division's April 29, 2002 decision on the <u>Petite</u>

waiver request), the public disclosure of the underlying recommendation would chill such

sensitive internal deliberations and stymie the effective enforcement of Federal criminal laws.

<u>See</u> Ciccone Dec. ¶ 32.  Thus, the two-page recommendation memorandum, which was withheld

in full by the Department, is classic Exemption 5 material.  To disclose this information would

reveal attorney work product and pre-decisional communications among government personnel,

such as discussions of various litigation issues, alternatives, and strategies.  <u>See</u> Ciccone Dec. ¶

30.  Disclosure would jeopardize the candid and comprehensive considerations essential for

efficient and effective agency decision-making and law enforcement.  <u>Id.</u>

### C.    The DOJ Properly Applied Exemption (b)(7)(C).

The FOIA exempts from the requirement of disclosure:

> (7)  records or information compiled for law enforcement
> purposes, . . . to the extent that the production of such law
> enforcement records or information . . . (C) could reasonably be
> expected to constitute an unwarranted invasion of personal
> privacy. . . .

5 U.S.C. § (b)(7)(C).  This exemption protects the identities of suspects and other persons of

investigatory interest who are identified in agency records in connection with law enforcement

investigations.  <u>Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice</u>, 816 F.2d 730,

780 (D.C. Cir. 1987), <u>modified on other grounds</u>, 831 F.2d 1124 (D.C. Cir. 1987), <u>rev'd on other</u>

<u>grounds</u>, 489 U.S. 749 (1989); <u>Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.</u>,

72 F.3d 897, 904 (D.C. Cir. 1996).  Indeed, the mere mention of identities of witnesses or other

persons in law enforcement files in such a way as to associate them with criminal activity is

subject to protection under Exemption 7(C).  <u>Reporters Comm. for Freedom of the Press</u>, 489

U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-96 (D.C. Cir.

1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

      In addition, the names of law enforcement officers who work on criminal investigations

have been protected against release by Exemption 7(C).  Davis v. U.S. Dep't of Justice, 968 F.2d

1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-88 (D.C. Cir.

1980).  Similarly, individuals who provide information to law enforcement authorities, like the

law enforcement personnel themselves, have protectable privacy interests in their anonymity.

Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of Justice, 683

F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to figure out the

individuals' identities through other means, or that their identities have been disclosed elsewhere,

does not diminish the privacy interests at stake.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir.

1990); Weisberg v. Dep't of Justice, 745 F.2d at 1476.

      Once a privacy interest has been established, it must be balanced against the public

interest, if any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dep't of Justice,

726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's

"core purpose" of shed[ding] light on an agency's performance of its statutory duties."  Reporters

Comm. for Freedom of the Press v. U.S. Dept of Justice, 489 U.S. 749, 773 (1989) (sustaining

nondisclosure of criminal records or "rap sheets").  This standard is not easily satisfied when law

enforcement information pertaining to individuals is sought, for there "is no reasonably

conceivable way in which the release of one individual's name . . . would allow citizens to know

'what their government is up to.'"  Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990).  See

also Albuquerque Publ'g Co., 726 F. Supp. at 855-56 (no public interest in disclosure of

sensitive information DEA obtained about individuals and their activities, where such material would not shed light on DEA's conduct with respect to the investigation).  Furthermore, in order to overcome legitimate privacy interests, the requester must not only demonstrate the existence of the public interest, but also that the public interest is both significant and compelling.  Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987); Stone v. FBI, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

Recently, the Supreme Court examined the scope of Exemption 7(C) in Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157 (2004).  The Court in Favish expressly reaffirmed the breadth of FOIA's law enforcement/privacy exemption, stating in pertinent part:

> Exemption 7(C)'s comparative breadth – it does not include "clearly" and uses "could reasonably be expected to constitute" instead of "would constitute" – is no drafting accident. . . .  Law enforcement documents . . . often contain information about persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance. There is special reason, therefore, to give protection to this intimate personal data, to which the public does not have a general right of access.

Id. at 157-58, 166 (emphasis added).  As the Court noted, Exemption 7(C)'s privacy interests require agencies to safeguard "the personal privacy of citizens against the uncontrolled release of information compiled through the power of the state."  Favish,  541 U.S. at 172.  To protect such privacy interests, the statute requires:

> the person requesting the information to establish a sufficient reason for the disclosure.  First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.  Second, the citizen must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted.

Id. (emphasis added).

Moreover, the Favish Court held that to overcome Exemption 7(C)'s weighty law enforcement/privacy protection, a requester's purported public interest in disclosure must be "more than a bare suspicion" in order for disclosure to be proper.  Instead, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." Id. at 173, citing Dep't of State v. Ray, 501 U.S. 164 (1991) (for "presumption of legitimacy accorded to the Government's official conduct"). Likewise, the District of Columbia Circuit Court has long noted that "a 'criminal law enforcement agency['s]' invocation of 'law enforcement purposes' warrants greater deference than do like claims by other agencies." Keys v. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987). Thus, the D.C. Circuit Court "requires simply that the nexus between the agency's activity . . . and its law enforcement duties must be based on information sufficient to support at least a colorable claim of its rationality." Id. (internal quotations omitted).

The Department properly evaluated responsive information in light of Exemption (b)(7)(C), and withheld protected information. See Ciccone Dec. ¶¶ 33-35.  The two-page recommendation memo at issue in this case was compiled for law enforcement purposes – namely, to facilitate the investigation and criminal prosecution of Plaintiff.  Ciccone Dec. ¶ 33. Exemption (b)(7)(C) was applied here to the withheld memo in an effort to protect the identity of third-party individuals, such as potential witnesses and law enforcement personnel, the release of which such information could subject such persons to an unwarranted invasion of their personal privacy.  Ciccone Dec. ¶ 34.  Release of the identifying information could result in unwanted efforts to gain further access to such persons or to personal information about them, or cause them harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences, all

28

to their detriment.  Ciccone Dec. ¶ 34.

The Department therefore determined that such information was exempt from disclosure by law, and that there was no public interest in the release of this privacy-protected information, because its dissemination would not help explain government activities and operations.  Ciccone Dec. ¶ 35.  No public interest would counterbalance the law enforcement and third-party individuals' privacy right in the information withheld under this exemption.  Ciccone Dec. ¶ 35.  Moreover, no individual provided any authorization or consent to disclose such information.  Ciccone Dec. ¶ 35; _see also_ 5 U.S.C. § 552a(b) ("No agency shall disclose any record . . . contained in a system of records . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains" unless otherwise authorized by law).

For the reasons set forth by Mr. Ciccone in his Declaration, the Department's application of Exemption 7(C) to the April 18, 2002 two-page recommendation memo that was withheld in full should be upheld.

### D.    The Department Properly Released All Reasonably Segregable Material.

The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte."  Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements". <u>Mead Data</u>, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. <u>Id</u>. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. <u>Armstrong v. Executive Office of the President</u>, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

The Department has met its segregability obligation here. First, the agency has set forth in a sworn declaration that the documents have been reviewed for segregability, as well as its determination that no additional information could be released to the Plaintiff. <u>See</u> Ciccone Dec. ¶ 36. Second, while the recommendation memo was withheld, Plaintiff was provided with the final decision regarding that recommendation in full, and without redaction. <u>See</u> Ciccone Dec. ¶¶ 7, 17. Moreover, by way of supplemental, discretionary release, the one-page transmittal (cover) letter accompanying the withheld recommendation letter has also been released, without redaction. <u>See</u> Ciccone Dec. ¶¶ 17, 22. However, the two-page recommendation memo itself – which was consistently withheld in full pursuant to three separate FOIA/PA exemptions – was found to contain no releasable portions. <u>See</u> Ciccone Dec. ¶ 36.

Simply stated, the withheld memo was carefully analyzed for segregability purposes, but no meaningful portions of the document could be released without destroying the integrity of the document as a whole, and therefore no reasonably segregable non-exempt information has been

30

withheld from Plaintiff.  Id.  Finally, it is implicitly clear from the level of detail throughout the

Department's declaration that it has carefully reviewed the document at issue, considered the

possibility of redacting and releasing rather than withholding documents.  In sum, the Ciccone

declaration and Vaughn index adequately demonstrate that all reasonably segregable, non-

exempt information has been disclosed.

## V.  CONCLUSION

As set forth above, the Department has responded properly to Plaintiff's request and has

complied with its obligations under the Privacy Act and the FOIA.  Accordingly, the Court

should grant Defendant's Renewed Motion for Summary Judgment and dismiss this case.


Dated: March 10, 2006                    Respectfully submitted,

                                         /s/
                                         KENNETH L. WAINSTEIN
                                         D.C. Bar # 451058
                                         United States Attorney


                                          /s/
                                         R. CRAIG LAWRENCE
                                         D.C. Bar # 171538
                                         Assistant United States Attorney


                                          /s/
Of Counsel:                              HEATHER R. PHILLIPS
                                         C.A. Bar # 19620
Anthony J. Ciccone                       Assistant United States Attorney
FOIA/Privacy Staff                       Civil Division
Executive Office for                     555 4th Street, N.W., Rm E4212
  United States Attorneys                Washington, DC 20530
Department of Justice                    (202) 514-7139

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DERRELL GILCHRIST,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | )     **Civil Action No. 05-1540 (RJL)** |
| | )     **ECF** |
| **U.S. DEPARTMENT OF JUSTICE,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**ORDER**

Upon consideration of defendant's Renewed Motion for Summary Judgment, the

Opposition thereto, and te entire record herein, it is this _____ day of _____, hereby

ORDERED that the defendant's motion is hereby GRANTED and this case is hereby

DISMISSED.


_____
UNITED STATES DISTRICT JUDGE

ECF service to counsel of record

By mail to:     Derrell Gilchrist, Pro Se
                Reg. No. 37284-037
                United States Penitentiary
                P.O. Box 1000
                Lewisburg, PA 17837